CLARA A. LOOMIS *vs.* WESLEY HOLLISTER.

First Judicial District, Hartford, May Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The plaintiff sought to recover damages for personal injury caused by the negligence of the defendant's servant in leaving a pair of horses attached to an ice-wagon unhitched and unattended while the servant, upon his return from delivering ice, was calling at the post-office for his newspaper. The parties were at issue as to whether the servant, at the time of the injury, was engaged in the performance of his master's business—even if conducting it in a disobedient and negligent manner—or whether he had so far departed therefrom as to indicate an abandonment of it and an unauthorized use of the horses and wagon for his own purposes. This question the trial judge submitted to the jury, laying down correctly the general principles of agency as applied to the relation of master and servant, and instructed them that a mere departure by a servant from the strict course of duty, even for a purpose of his own, would not, in and of itself, be such a departure from the master's business as to release him from responsibility ; but where there was not merely a deviation but a total departure from the course of the master's business, so that the servant might be said to be " on a frolic" of his own, the master's responsibility ceased. *Held* that these instructions furnished the defendant no just ground of complaint, and that the use of the word " frolic," by way of illustration, could not be treated as a fatal error on the alleged ground that it must have confused the jury and misled them into believing that no deviation by the servant upon his own business could amount to an abandonment of his employment, unless that business was of a hilarious or jovial nature.

Where the conclusion to be drawn from the nature and extent of the servant's deviation is doubtful, depending upon the weight which may not unreasonably be accorded to circumstances of dubious import, a question of fact is presented which should be determined by the jury under proper instructions from the court.

Argued May 5th—decided July 24th, 1903.

ACTION for damages for personal injuries alleged to have been caused by the negligence of the defendant's servant, brought to the Superior Court in Hartford County and tried to the jury before *Roraback, J.;* verdict and judgment for

the plaintiff for $500, and appeal by the defendant. *No error.*

On August 11th, 1899, a heavy ice-cart drawn by a pair of horses, being the property of the defendant, collided with a wagon in which the plaintiff was seated, whereby she was thrown upon the ground and received the injuries complained of. The defendant's team was in charge of his servant named Beebe.

The following facts were claimed by the parties to have been proved: The defendant had employed Beebe the preceding May. His daily duties were, early in the morning, to take the defendant's team and deliver ice over a route covering several miles, and drive the horses back to the defendant's stable. Upon returning to the stable his duties ended for the day, until six o'clock, when he would ordinarily feed the horses. When Beebe was first employed in May, the defendant went about with him in the peddling of ice and showed him the specific route to take. On the day in question Beebe started with the team from the stable at an early hour in the morning and was returning to the stable after making the last delivery of ice, on the natural route home, and the one specifically prescribed for him by the defendant; but instead of continuing on this route he took a roundabout and longer route, for the purpose of stopping at the post-office to get his paper. He went into the post-office, leaving the horses unhitched and unattended. It was then about 1:30 P. M. The horses had not been fed for seven hours, and were left standing headed toward the stable, which was about a quarter of a mile distant. While Beebe was in the post-office the horses started for home, ran against the wagon of the plaintiff, and so caused her injury.

The defendant asked the court (*Roraback, J.*) to charge the jury that even if they should find that Beebe was negligent, the plaintiff could not recover, if they should also find "that the driver had departed from the route required by the service and business of the defendant, for purposes of his own, . . . and that, but for such departure, the injury complained of would not have happened." The court did

not so charge, but did charge in respect to the deviation from the course prescribed, as follows : " The defendant contends that upon the day and time in question that part of the street where the accident happened was not on Mr. Beebe's route, that he had no occasion or business to go there for the defendant, and that his being at this point was contrary to the instructions given him by the defendant in his business. Now, in treating this question, gentlemen, I shall quote a little from our highest authority in this State on this subject. The general rule relating to a question of this kind in this class of cases may be stated as follows : ' For all acts done by a servant in obedience to the express orders or directions of a master, or in the execution of the master's business within the scope of his employment, and for acts in any sense warranted by express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible. For acts which are not within these conditions the servant alone is responsible.' This rule tells us that the master's liability depends upon whether the acts were done within the scope of his employment. Whether, then, the alleged negligent act of the defendant in this case, for which it is now sought to make the defendant liable, was done in the execution of the defendant's business, within the scope of his employment, or not, is a question of fact which you are to determine like these other questions, gentlemen, from all of the evidence concerning this transaction. To repeat: the defendant contends that his servant by going to the post-office upon the day and time in question so far deviated from his authority and the course of his employment, as to relieve the defendant from all liability for negligence upon this occasion. In case of deviation from the scope of employment from the defendant's business, a mere departure by the servant from the strict course of duty, even for a purpose of his own, will not in and of itself be such a departure from the master's business as to relieve him from responsibility. Not every deviation of the servant from the strict execution of his duty, nor every disre-

gard of particular instructions, will be such an interruption of·the course of employment as to determine or suspend the master's responsibility. But where there is not merely a deviation but a total departure from the course of the master's business, so that the servant may be said to be on a frolic of his own, the master is no longer liable for a servant's conduct.

"Now, gentlemen, was there such a total departure from the defendant's business when this accident occurred that the defendant is not answerable for this act of negligence, if you find that fact to exist?

"The plaintiff contends, gentlemen, that there has been no such deviation, no such total departure from the business of the defendant as to permit him to escape responsibility. Well, gentlemen, that is a question of fact. And in that connection you will consider the instructions, if any, that this defendant gave to this man Beebe ; you will examine the maps as to the location of these streets, if necessary, consider the defendant's business, with all of its bearings, the location of his stables, the distance by different routes, and all of the other facts and circumstances pertaining to this question, and in that way, gentlemen, you will determine this issue of the case."

The appeal assigns error in the charge as given and in the neglect to charge as requested.

*Harry M. Burke*, for the appellant (defendant).

*Hugh O'Flaherty* and *Herbert O. Bowers*, for the appellee (plaintiff).

HAMERSLEY, J. When the accident occurred Beebe had been the servant of the defendant for some two months, and his duties as such included the daily use of his master's horses and cart for the delivery of ice. For this purpose he was directed to take the team each morning from his master's stables, proceed to the route assigned him, deliver the ice as needed, and return to the stables. While thus engaged, from the start in the morning to the return and stabling of the horses, his care and management of the team so intrusted to

him would be in the execution of his master's business within the scope of his authority. While returning to the stables on the day in question, he reached the corner of a parallelogram enclosed by four streets. Instead of following the street leading directly to the stables, he drove through the streets bounding the parallelogram on the other three sides. This detour was nearly half a mile longer than his direct course, and was made for the purpose of passing the post-office on his return to the stables, in order to stop there and get a newspaper for himself. When he was first employed, Beebe was instructed as to the specific route he should follow, and his return to the stables by the post-office was in violation of those instructions. Was Beebe, in driving and managing his master's team during the time occupied by this detour, in the execution of the master's business within the scope of his employment? This question the trial court left to the jury as one of fact, to be determined by them from all the evidence concerning the transaction. This action of the court is not complained of. The only contention of the defendant is, that the language used by the court in submitting the question to the jury does not fully and fairly show the relation between the fact to be determined and the law governing the liability of the defendant, and was calculated to confuse and mislead the jury.

A person guilty of negligence which causes injury to another may be liable to pay the injured party damages. He may also be liable if the acts of negligence are not done by himself personally but by another acting under his express direction; such liability for the negligent acts of another is controlled by the general law of agency. But the law goes further than this, and makes a master liable for acts of negligence done by his servant, although such acts are unauthorized, or even contrary to instructions, when the negligent acts are done in the execution of the master's business for which the servant has been employed. This law is based on a rule of public policy, which declares that substantial justice is on the whole best served by making a master responsible for the injuries caused by his servant acting in his service,

when set to work by him for his own benefit. *Hearns* v. *Waterbury Hospital*, 66 Conn. 98, 123-126. It is this rule of policy that has established, as applicable to that class of cases to which the one before us belongs, the rule of law, namely: the master is liable for his servant's negligence, if the negligent acts are done in the execution of the master's business within the scope of the servant's employment; and this rule of policy must be kept in mind in determining the meaning of the language used to express the rule of law. That meaning would seem sufficiently clear. As applicable to cases like the present, it may be amplified in this way: where a servant's employment includes the daily or occasional driving, use and management of his master's horses and wagon for the purposes of that employment, and the servant, while thus employed, is guilty of negligence in the management of the team, whether by reason of reckless driving or of recklessly leaving the horses unhitched and unattended, that negligence is done in the execution of his master's business within the scope of his employment; and this is true although the master may have forbidden such negligent acts and although the immediate occasion of the negligence is the accomplishment of some purpose purely personal to the servant, as the overtaking of some one he wishes to speak with on his own business, or stopping to enter a house on an errand of his own, or disobedience of orders as to the precise route he shall follow; that is to say: the servant may be engaged in the execution of his master's business within the scope of his employment, although, in conducting that business, he is negligent, disobedient and unfaithful. On the other hand, if the servant takes his master's team without authority and goes off on an errand of his own, he is not engaged in his master's business and the master is not liable for his negligence. Likewise, when the servant has taken his master's team in pursuance of his employment and, abandoning the purpose for which he started, goes off on some business of his own, he may thus take his master's team into his own possession without authority, for the transaction of his own business, and in such case his acts are not in the execution

of his master's business and his master is not liable for his negligence. Such amplifications of the brief statement of the rule are illustrations of its meaning, and may be regarded as propositions of law. *Stone* v. *Hills*, 45 Conn. 44–51; *Whatman* v. *Pearson*, L. R. 3 Com. Pleas, 422, 425; *Joel* v. *Morrison*, 6 Car. & Payne, 501, 502; *Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518, 523. But where it is conceded that a servant is using his master's team within the scope of his employment and that he departs from the instructions of his master for some purpose of his own, and the conflicting claims are made, on the one hand that the departure indicated a disobedient or unfaithful conduct of his master's business, and on the other hand that the departure indicated an abandonment of that business and a taking of the team by the servant without authority and solely for the transaction of his own business, and the circumstances supporting these conflicting claims are of such doubtful import that a trier might, not unreasonably, reach either conclusion, a question of fact is presented which should be determined by the jury in view of the instructions of the court as to the true meaning of the rule of law governing the master's liability in such case. It is claimed that the question of fact submitted to the jury in the present case was of this nature: Under all the circumstances established by the evidence, was Beebe, while driving the horses back to the stables by way of the post-office, engaged in the employment upon which he had started in the morning, or was he in the possession of his master's team without authority for the mere purpose of transacting his own business?

In other words, was Beebe engaged in prosecuting his master's business, although conducting it in a negligent and disobedient manner, or had he abandoned his master's business for the prosecution of his own? We think the court, in submitting this question to the jury, gave a sufficiently full and accurate statement of the law. This portion of the charge is substantially in language used by the court in *Ritchie* v. *Waller*, 63 Conn. 155, 160–166, where we held, upon a state of facts closely analogous to those presented by

this record, that the conclusion of the master's liability, whether treated as one of fact or of law, was clearly correct. In that case the master pointed out to the servant the route to be taken in going and returning upon his master's business, and supposed that the same route would subsequently be followed, but did not specifically instruct him so to do. In the present case the master pointed out to the servant the route to be taken in going and returning upon his business, and instructed him to follow that route in subsequent trips. Whether this distinction is really important or not, the court did charge the jury to consider these instructions in connection with all the other circumstances proved, in determining whether the deviation from the prescribed route was such that it could not be considered as a continuance of the journey on the master's business, but constituted in fact a total departure and separate journey on his own business. To illustrate the complete severance from the master's business involved in the change of a journey commenced on the master's account into a separate journey on the servant's account, the court said that the master would not be liable " where there is not merely a deviation but a total departure from the course of the master's business, so that the servant may be said to be on a frolic of his own." This is an illustration occasionally used by the courts for more than thirty years. The defendant claims that the average juryman is so ignorant or uncultured that the use of this illustration would confuse him and mislead him into believing that the court intended to say that no deviation on business of the servant could become a total departure unless that business were of a hilarious nature. We think the defendant is mistaken; at all events we cannot treat the use of an illustration thus sanctioned as a fatal error.

There was no error in neglecting to charge in the language of the defendant's request; all that the defendant was entitled to was sufficiently stated in the charge as given.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.

# MEMORANDA OF CASES

## NOT REPORTED IN FULL.