[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendants New Britain Board of Education, James P. Rhinesmith, Ashley Roberts, and Joann Beekley, have moved to strike 17 of the 28 counts in the Third Revised Complaint. Description of the Complaint
This action stems from the transfer of the plaintiff by the defendant Board of Education, the plaintiffs refusal to be transferred, and her declaration that she was involuntarily terminated in violation of various statutory and common law requirements. The first five counts allege, generally, sexual harassment, sexual orientation discrimination, retaliation, and wrongful discharge, all in the context of the transfer and the plaintiffs constructive discharge by virtue of her subsequent refusal to accept the same.
In the balance of the Complaint the plaintiff alleges that she was harassed in various, distinct respects by three individual defendants, Maria Garcia, Scott Macdonald, and Joann Beekley, that some or all of the moving defendants, Board of Education ("Board"), James P. Rhinesmith ("Rhinesmith"), Ashley Roberts ("Roberts"), and Joann Beekley ("Beekley"), collectively referred to as the defendants — should have prevented the same, and that she was emotionally distressed.
Counts 6, 7, 11, 12, 18, 19, 23, and 24 spring from the same essential allegations of fact — harassing communications in 1997 by the defendant Garcia against the plaintiff inspired by jealousy of the plaintiffs continuing friendship with Garcia's new intimate relation, Lynne Kowalcyk, who happened to be the plaintiffs longtime intimate partner. At the time, all three were employees of the defendant Board and, in the fall of 1997, were assigned to the same school. These allegations include:
• that the plaintiff received offensive and threatening material through the interschool mail and computer systems in May, 1997; CT Page 1241
• that in May, 1997, false allegations were made to DCF regarding the plaintiffs care of her minor daughter;
• that during the summer of 1997 two additional false allegations were made to DCF;
• that in September, 1997, the plaintiff received offensive and/or threatening e-mail messages through the school computer;
• that in October, 1997, plaintiff received a threatening message under the door of her office at school;
• that from August 16 to October 27, 1997, plaintiff received bogus or offensive or threatening messages on her beeper:
• that the aforementioned incidents of offensive and/or threatening communications were perpetrated by Maria Garcia, an employee of the defendant Board; and
• that the aforementioned messages were based upon the former long-term physical relationship between the plaintiff and Lynne Kowalczyk, the current physical relationship between Ms. Kowalczyk and the defendant Garcia, and the continuing close friendship between the plaintiff and Ms. Kowalczyk and the threat that this continuing close friendship posed to the defendant Garcia.
Counts 8, 9, 13, 14, 15, 16, 20, 21, 25, 26, 27 and 28 are based the allegation of harassing telephone calls to plaintiffs home in January-March, 1998, that the plaintiff attributes to the defendant Board's Personnel Manager, defendant Macdonald.
Counts 10 and 22 are based on the allegation that the defendant Beekley, a school principal, told the plaintiff to leave a certain public park where a school event was taking place, that she said she would call the authorities to make her leave, and that one morning, Beekley drove away from the front of the plaintiffs house quickly with wheels screeching. Count 10 alleges intentional infliction of emotional distress by Beekley, and Count 22 alleges that this conduct was within the scope of employment and is the defendant Board's liability via respondeatsuperior.
Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138, CT Page 1242 142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts. and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
"It is incumbent on a plaintiff to allege some recognizable cause of action" in the complaint and it is not the burden of the defendant to attempt to correct the deficiency. Brill v. Ulrey, 159 Conn. 371. 374,269 A.2d 262 (1970). A motion to strike is an appropriate means of presenting to the court legal issues at the outset of litigation. Gordonv. Bridgeport Housing Authority, 208 Conn. 161, 170. 544 A.2d 1185
(1988). "Whenever a party wishes to contest . . . the legal sufficiency of any such complaint . . . or any count thereof, because of the absence of any necessary party . . . that party may do so by filing a motion to strike the contested pleadings or part thereof." George v. St. Ann'sChurch, 182 Conn. 322, 325, 438 A.2d 97 (1980).
Count 7 alleges that the 1997 communications constituted sexual harassment, and that the Board's failure to investigate the same constituted intentional infliction of emotional distress.
"In order for the plaintiff to prevail in a case for liability under . . . [the claim of intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe . . ." Petyan v. Ellis,200 Conn. 243, 253. 510 A.2d 1337 (1986)). The standard for stating such a claim is very high, requiring allegation of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Martin v. Citibank, N.A., 762 F.2d 212, 220 (2nd
CT Page 1243 Cir. 1985) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 556,402 N.Y.S.2d 991, 992-993, 373 N.E.2d 1215, 1217 (1978)); DeLaurentisv. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991). According to the Restatement, a case of intentional infliction "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!'" Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20
(1991), citing 1 Restatement 2d, Torts Sec. 46 comment (d). Whether the defendants' conduct and the plaintiffs resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for the court. Mellaly v. Eastman Kodak Co., supra, at 18; Reed v. Signode Corporation, 652 F. Sup. 129, 137 (D. Conn. 1986).
In Count 7, the actors are the defendants, the Board and its employees, and not Ms. Garcia. The issue is whether their failure to investigate communications, and not the communications themselves, is so extreme and outrageous as to be atrocious and exceed all bounds tolerated by a civilized society. The Board's failure to investigate conduct that was based entirely upon the interpersonal relationships of three employees was neither extreme nor outrageous. Count 7 fails to state a cause of action against the defendants and is ordered stricken.
The operative paragraph of Count 9 alleges as follows:
 Although Defendants Rhinesmith and Board knew, or should have known, on or about June 12, 1998, that it was highly possible that the person making the aforesaid telephone calls to the Plaintiff was Defendant Macdonald, Defendants Rhinesmith and Board failed to further inquire, investigate, attempt to mitigate, or stop Defendant Macdonald from making any further telephone calls to the Plaintiff. They failed to further inquire and investigate into the findings of its [sic] own expert.
Thus, the conduct of the Board allegedly constituting intentional infliction of emotional distress is its failure to investigate and stop the one call alleged to have made after June12, 1998.
As was the case in the contest of Count 7, the actors are the defendants Rhinesmith and the Board, and not the defendant Macdonald. The issue is whether their failure to investigate the 1998 telephone calls, and not the calls themselves, was so extreme and outrageous as to be atrocious and exceed all bounds tolerated by a civilized society. Failing to investigate is neither extreme nor outrageous. Petyan v. Ellis, CT Page 1244supra. Count 9 fails to state a cause of action against the defendants and is ordered stricken.
Count 10 alleges that the defendant Beekley "accosted the Plaintiff and told her to leave" a public park at which a school function was ongoing, that she would contact the authorities to make her leave, and that on another date she drove away from the Plaintiff's residence "quickly with tires screeching." There is an issue of fact as to whether the alleged conduct is sufficiently extreme or outrageous to satisfy the pleading requirements of a cause of action for intentional infliction of emotional distress. Therefore the Motion to Strike Count 10 is denied.
Count 12 asserts that the failure to investigate and stop Garcia's communications constitutes negligent infliction of emotion distress by the defendants. Again, the communications were based upon the changing physical relationships and continuing close friendship as among the plaintiff, Mr. Kowalczyk, and Ms. Garcia.
A claim of negligent infliction of emotional distress requires that the plaintiff plead and prove that "the defendant should have realized thatits conduct involved and unreasonable risk of causing emotional distress and that this distress, if it were caused, might result in illness or bodily injury." Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978) (emphasis added). As a matter of law, the defendants could not have foreseen that their failure to investigate and stop these interpersonal communications, as opposed to the communications themselves, involved the unreasonable risk of causing emotional distress to the plaintiff. Therefore, Count 12 is ordered stricken.
Count 14 asserts that the failure to investigate and stop Macdonald's telephone calls constituted negligent infliction of emotional distress by the defendants. A claim of negligent infliction of emotional distress requires that the plaintiff plead and prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that this distress, if it were caused, might result in illness or bodily injury." Montinieri v. Southern New EnglandTelephone Co., supra, at 345 (1978) (emphasis added). As a matter of law, the defendants Rhinesmith and the Board could not have foreseen that their failure to investigate and stop these calls, as opposed to the calls themselves, involved risks of this level. For these reasons, Count 14 is ordered stricken.
The operative paragraphs of Count 16 allege that the defendants Rhinesmith and the Board knew that the calls originated from the Board's CT Page 1245 offices and "that the Defendant Macdonald was the likely caller, but said Defendants failed to take any action to prevent further telephone calls." Such failure to act constituted an intrusion upon the right to privacy and seclusion. Count 16 also alleges that the calls were willful and wanton.
As was the case in the context of Count 9 (failure to investigate and stop calls constitutes intentional infliction of emotional distress), the actors are the defendants Rhinesmith and the Board and not the defendant Macdonald. The issue is whether their failure to investigate and stop the calls, and not the calls themselves, constituted an intrusion into the plaintiffs seclusion that would be highly offensive to a reasonable person. Failure to investigate is not an intrusion of any sort. Intrusion is an affirmative act; the defendants' failure to stop an intrusion is not itself an intrusion. For the foregoing reason, Count 16 is ordered stricken.
Count 18, alleges that the 1997 communications by Ms. Garcia, i.e., threatening mail, false DCF complaints, threatening e-mail, threatening messages under a door, and threatening messages on a beeper, were within the scope of her employment, in furtherance of the defendant Board's business, and, that, therefore, the Board is liable for the Ms. Garcia's intentional infliction of emotional distress via respondeat superior.
The doctrine of respondeat superior applies when the affairs of the principal, and not solely the affairs of the agent, are being furthered by the objectionable act. A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 208, 579 A.2d 69 (1990); Larsen Chelsey Realty Co. v.Larsen, 232 Conn. 480, 501, 656 A.2d 1009 (1995); Mitchell v. Resto,157 Conn. 258, 262, 253 A.2d 25 (1968). Unless the employee is actuated at least in part "`by a purpose to serve a principal, the principal is not liable.' [citations omitted]" International Distributing Corporationv. American District Telegraph Co., 569 F.2d 136, 139 (D.C. Cir. 1977). "A master is liable only for those torts of his servant . . . which have for their purpose the execution of the master's orders or the doing of the work assigned to him to do." Bradlow v. American Dist. Tel. Co.,131 Conn. 192, 196, 38 A.2d 679 (1944). Furthermore, while scope of authority is often a question of fact, the Courts have considered the issue to be one of law when the alleged acts of the employee are clearly outside the scope of authority. Brown v. Housing Authority,23 Conn. App. 624, 628, 583 A.2d 643 (1990); A-G Foods, Inc. v.Pepperidge Farm, Inc., supra, at 207.
The wrongful conduct alleged in the Complaint has no connection to the employment of those individuals but for the fact that they were employed CT Page 1246 by the same employer and that some of the alleged wrongs by one against the other occurred during business hours and occurred on Board property. "`In the course of employment' means while engaged in the service of the master, and it is not synonymous with the phrase `during the period covered by his employment.'" Levitz v. Jewish Home for the Aged, Inc.,156 Conn. 193, 198, 239 A.2d 490 (1968), quoting Pacific Telephone Telegraph Co. v. White, 104 F.2d 923, 926 (9th Cir. 1939). The plaintiff makes the conclusory allegation that Ms. Garcia's conduct was within the scope of her employment and in furtherance of the Board's business without alleging any underlying facts on this point.
Absent facts to support the conclusory allegation that Ms. Garcia was acting within the scope of her employment and in furtherance of the Board's business, the plaintiff has failed to state a cause of action forrespondeat superior. Reading Count 18 in the context of the more specific facts alleged in Paragraph 14 of Count 6[1], it is apparent that there was no business purpose whatsoever underlying the alleged conduct of Ms. Garcia.
For the foregoing reasons Count 18 is ordered stricken.
Count 19 essentially takes Count 7, alleging an intentional infliction of emotional distress by virtue of all of the defendants' (including the Board's) failure to investigate and/or stop harassment, and adds the allegation that such failure was within the individual defendants' scope of employment, resulting in a respondeat superior claim against the defendant Board. This count sufferes from the same deficiency as Count 7 — there is no stated cause of action for intentional infliction of emotional distress for which the defendant Board can be held vicariously liable. Therefore, Count 19 is ordered stricken.
Count 20 alleges that the 1998 telephone calls were extreme and outrageous, thereby constituting an intentional infliction of emotional distress, and that the Board is liable via respondeat superior. That count alleges numerous telephone calls received by the plaintiff "at home and at work," in which defendant Macdonald, the director of personnel for the defendant Board, made various threats to the plaintiff concerning her threatened lawsuit against the defendants. In one phone call, a male (allegedly Macdonald) allegedly stated, "you want to win your case, we will expose you. You won't work anywhere when we get finished." The content of the telephone calls alleged in this count could be deemed to be sufficiently outrageous and extreme to constitute intentional infliction of emotional distress.
In Perodeau v. Hartford, 259 Conn. 729, 762, 763, 792 A.2d 752 (2002) CT Page 1247 the Court held that an individual employee could not be held liable fornegligent infliction of emotional distress for conduct which occurred during employment (as opposed to termination of employment). The rationale for this holding was that subjecting employees to lawsuits for negligent infliction of emotional distress would have a "pervasive chilling effect" which would "outweigh[s] the safety interest of employees in being protected from negligent infliction of emotional distress," and "in light of the inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress, extending the tort of negligent infliction of emotional distress to ongoing employment relationships would open the door to spurious claims." 259 Conn. at 758.
The Court in Perodeau did not address a cause of action forintentional infliction of emotional distress which occurs during employment. Arguably, such a cause of action should not be permitted for the same reasons that bar a cause of action for negligent infliction of emotional distress. However, there is certainly a distinction between negligent and intentional conduct. The Court might hold that the social costs of allowing claims for intentional, as opposed to negligent, infliction of emotional distress would not outweigh the social benefits. See Perodeau v. Hartford, supra, at p. 759. Therefore, this court will not strike Count 20 on the basis of Perodeau v. Hartford.
Even though Count 20 has survived an analysis under Perodeau v.Hartford, it could still be stricken if the conduct of defendant Macdonald did not occur within the scope of his employment for purposes of respondeat superior liability. The defendants argue that the phone calls were not within the scope of Macdonald's employment. This court disagrees. When a personnel director calls an employee or former employee of his principal concerning a pending or threatened lawsuit against the principal, that conduct could well be deemed to be within the scope of his employment and in furtherance of the business of his principal. For the foregoing reasons the Motion to Strike Count 20 is denied.
Count 21 takes Count 9, alleging an intentional infliction of emotional distress by virtue of all of the defendants' (including the Board's) failure to investigate and/or stop the telephone calls, and adds the allegation that such failure was within the individual defendant Rhinesmith's scope of employment, resulting in a respondeat superior
claim against the defendant Board. This Count fails for the same deficiency found in Count 9 — there is no stated cause of action for intentional infliction of emotional distress for which the defendant Board can be held vicariously liable. Count 21 is ordered stricken. CT Page 1248
Count 22 alleges that the tort of intentional infliction of emotional distress recited in Count 10 occurred in the scope of the actor's employment and in furtherance of the Board's business. As stated above, Count 10 alleges that defendant Beekley, while she was principal of Northend School, and an employee of the defendant Board, "accosted" the plaintiff and asked that she leave a school event that was being held in a public park. Whether or not the conduct alleged in Count 10 is sufficiently extreme and outrageous to constitute an intentional infliction of emotional distress is a question of fact, and, therefore, Count 10 has not been ordered stricken. Similarly, whether defendant Beekley's conduct was within the scope of her employment remains a question of fact and the Motion to Strike Count 22 is denied.
Count 23 incorporates by reference all 14 paragraphs of Count 11. Count 11Z alleges negligent infliction of emotional distress, by virtue of the 1997 communications, against Ms. Garcia only. Count 23 alleges that the Board is liable for Ms. Garcia's communications based on the doctrine ofrespondeat superior. As set forth above, Ms. Garcia's communications were not within the scope of her employment. Count 11 expressly attributes the communications to changing physical relationships and continuing close friendships. As a matter of law, there was plainly no purpose in these communications to serve the Board as principal. See A-G Foods, Inc.,supra. Therefore, there is no liability under a respondeat superior theory.
Furthermore, an individual employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment. Perodeau v.Hartford, 259 Conn. 729, 762, 763, 792 A.2d 752 (2002). For the foregoing reasons, Count 23 is ordered stricken.
Count 24 incorporates Count 12, which alleges a negligent infliction of emotional distress by virtue of all of the defendants' (including the Board's) failure to investigate and/or stop the communications, and adds the allegation that such failure was within the individual defendants' scope of employment, resulting in a respondeat superior claim against the Defendant Board. This Count suffers from the same deficiency as Count 12 — failing to investigate and stop interpersonal communications does not state a cause of action for negligent infliction of emotional distress at all. Therefore, Count 24 is ordered stricken.
Count 25 alleges respondeat superior liability of the Board based on the conduct of defendant Macdonald, stated in Count 13, which alleges negligent infliction of emotional distress, by virtue of the 1998 phone CT Page 1249 calls. Under Perodeau v. Hartford, supra, that conduct cannot subject defendant Macdonald to liability for negligent infliction of emotional distress because it occurred within the plaintiffs ongoing employment. The Board cannot be vicariously liable for a nonexistent cause of action. Therefore, Count 25 is ordered stricken.
Count 26 alleges a respondeat superior claim against the defendant Board based on the conduct described in Count 14, which alleges a negligent infliction of emotional distress by virtue of all of the defendants' (including the Board's) failure to investigate and/or stop the telephone calls, and adds the allegation that such failure was within the individual defendant Rhinesmith's scope of employment, resulting in arespondeat superior claim against the Defendant Board. This Count suffers from the same deficiency as Count 14 — failing to investigate and stop telephone calls does not state a cause of action for negligent infliction of emotional distress at all. Therefore, Count 26 is ordered stricken.
Count 27 alleges a respondeat superior claim against the defendant Board based on the allegations of Count 15. That count alleges a cause of action for invasion of privacy based on numerous telephone calls received by the plaintiff "at home and at work," in which defendant Macdonald, the director of personnel for the defendant Board, made various threats to the plaintiff concerning her threatened lawsuit against the defendants. In one phone call, a male (allegedly Macdonald) allegedly stated, "you want to win your case, we will expose you. You won't work anywhere when we get finished."
Count 27 alleges that the 1998 telephone calls to the plaintiffs home constituted an unreasonable intrusion upon her seclusion and that the same occurred within the scope of the defendant Macdonald's employment rendering the defendant Board vicariously liable. The defendants moved to strike this count on the grounds that the telephone calls could not have constituted an invasion of privacy as a matter of law and the calls were not within ths scope of Macdonald's employment.
The right to privacy is invaded if a person unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public. Korn v. Rennison,21 Conn. Sup. 400 (1959); Restatement of Torts § 867; Goodrich v.Waterbury-Republican, Inc., 188 Conn. 107, 127, 438 A.2d 1317 (1982);Venturi v. Savitt, Inc., 191 Conn. 588, 591, 468 A.2d 933 (1983); Jonapv. Silver, 1 Conn. App. 550, 557, 474 A.2d 800 (1984). There are four distinct actionable areas in this realm: (1) intrusion upon the plaintiffs seclusionor private affairs; (2) disclosure of embarrassing CT Page 1250 private facts about the plaintiff; (3) publishing false derogatory statements about the plaintiff, and (4) commercial appropriation of the plaintiffs likeness. LaFontaine v. Family Drug Stores, Inc.,33 Conn. Sup. 66. 70-7f (1976). Liability exists if the conduct was such that the defendants knew or should have known that their actions would be offensive to the ordinary person. Korn v. Rennison, supra, at 403-404.
Harassing telephone calls can be an unwarranted invasion of privacy.Gormely v. Director, Connecticut State Department off Probabtion,632 F.2d 938, 942 (2d Cir. 1980). Construed in a manner most favorable to the plaintiff, the telephone calls to the plaintiffs home could constitute an intrusion upon the plaintiffs seclusion. Moreover, when a personnel director calls an employee or former employee of his principal concerning a pending or threatened lawsuit against his principal, that conduct could well be deemed to be within the scope of his employment and in furtherance of the business of the principal. For the foregoing reasons the Motion to Strike Count 27 is denied.
Count 28 alleges that the failure to investigate and stop the 1998 calls was an intrusion upon the plaintiffs seclusion, that such failure was within the scope of employment, and that the defendant Board is liable for the failure via respondeat superior. The premise of this count — that a failure to investigate and stop certain conduct is itself an intrusion upon seclusion — is fatally deficient. The plaintiff has provided no authority to support the claim that a failure to investigate can constitute an invasion of privacy. Count 28 is ordered stricken.
To summarize, the following counts have been ordered stricken: 7, 9, 12, 14, 16, 18, 19, 21, 23, 24, 25, 26, 28.
By the court,
 ___________________ Aurigemma, J.